FILED

2016 Apr-20  AM 10:24
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| VIRGINIA SPURLOCK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 4:15-CV-330-LSC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OF OPINION

## I.     Introduction

The plaintiff, Virginia Spurlock, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for a period of disability and Disability Insurance Benefits ("DIB"). Ms. Spurlock timely pursued and exhausted her administrative remedies and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Spurlock was fifty-nine years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a high school education, as well as training as a cosmetologist. (Tr. at 32; Exhibit 3E.) Her past work experiences

include employment as a hairdresser. (Tr. at 34.) Ms. Spurlock claims that she became disabled on March 30, 1997, the day she stopped working as a hairstylist, due to back problems and seizures. (Tr. at 167.)

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled and thus eligible for DIB or SSI. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The evaluator will follow the steps in order until making a finding of either disabled or not disabled; if no finding is made, the analysis will proceed to the next step. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The first step requires the evaluator to determine whether the plaintiff is engaged in substantial gainful activity ("SGA"). *See id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the plaintiff is not engaged in SGA, the evaluator moves on to the next step.

The second step requires the evaluator to consider the combined severity of the plaintiff's medically determinable physical and mental impairments. *See id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An individual impairment or combination of impairments that is not classified as "severe" and does not satisfy the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 will result in a finding of not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). The

decision depends on the medical evidence contained in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971) (concluding that "substantial medical evidence in the record" adequately supported the finding that plaintiff was not disabled).

Similarly, the third step requires the evaluator to consider whether the plaintiff's impairment or combination of impairments meets or is medically equal to the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the criteria of a listed impairment and the durational requirements set forth in 20 C.F.R. §§ 404.1509 and 416.909 are satisfied, the evaluator will make a finding of disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the plaintiff's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluator must determine the plaintiff's residual functional capacity ("RFC") before proceeding to the fourth step. *See id.* §§ 404.1520(e), 416.920(e). The fourth step requires the evaluator to determine whether the plaintiff has the RFC to perform the requirements of his past relevant work. *See id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the plaintiff's impairment or combination of impairments does not prevent him from performing his past relevant work, the evaluator will make a finding of not disabled. *See id.*

3

The fifth and final step requires the evaluator to consider the plaintiff's RFC, age, education, and work experience in order to determine whether the plaintiff can make an adjustment to other work.  *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the plaintiff can perform other work, the evaluator will find him not disabled.  *Id.*; *see also* 20 C.F.R. §§ 404.1520(g), 416.920(g).  If the plaintiff cannot perform other work, the evaluator will find him disabled.  20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 416.920(a)(4)(v), 416.920(g).

Applying the sequential evaluation process, the ALJ first found that Plaintiff last met the insured status requirements of the Social Security Act on March 31, 1997. (Tr. at 12.) He further determined that Ms. Spurlock has not engaged in SGA since the alleged onset of her disability, March 30, 1997, through March 31, 1997, the date she was last insured for DIB. (*Id.*) According to the ALJ, Plaintiff had the following medically determinable impairments: mild airway obstruction, status post lumbar laminectomy, and bilateral carpal tunnel syndrome status post release times two. (Tr. at 11, Finding No. 3.) However, he found that through the date last insured, Plaintiff did not have a severe impairment or combination of impairments because her impairments did not limit her ability to perform basic work activities for twelve consecutive months. (Tr. at 11, Finding No. 4.) In support of this finding, the ALJ discussed Ms. Spurlock's medical records but explained that there

were "hardly any records" from the period at issue, and they did not support any work-related limitations prior to her date last insured. (Tr. at 12.) The ALJ explained that Plaintiff had worked up until March 30, 1997, which was only one day prior to her date last insured, which was March 31, 1997. (*Id.*) Accordingly, he determined that Ms. Spurlock failed to meet her burden of proving she was disabled from March 30, 1997, through March 31, 1997. (*Id.*)

## II.    Standard of Review

This Court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)).  This Court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, this Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir.

2004)).  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

However, no decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)).  Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.  Discussion

Ms. Spurlock alleges that the ALJ's decision should be reversed and remanded for two reasons. First, she believes that she was denied a full and fair hearing because she did not testify regarding her impairments or her alleged onset

date at either of her two hearings. Second, Ms. Spurlock contends that the ALJ should have called a medical expert to determine the alleged onset date of her disability.

## A.    Full and Fair Hearing

As an initial matter, the Court notes that to be entitled to DIB, Plaintiff had to prove she became disabled while insured for DIB. *See* 42 U.S.C. §§ 416(i)(3), 423(a), (c); 20 C.F.R. §§ 404.101, 404.130, 404.131 (2015). Because Plaintiff's insured status for DIB expired after March 31, 1997, she had to prove she became disabled on or prior to that date. (Tr. at 57, 144, 163). That date was fourteen years prior to Plaintiff ever seeking DIB in this case, which was on April 11, 2011. Thus, the relevant period for proving DIB was remote in time. Plaintiff produced sparse medical evidence from this limited and remote period. The relevant period was also narrow in scope, as her insured status for DIB expired only one day after she alleged her conditions became disabling. Per the sequential evaluation process, if a claimant fails to prove she has a severe impairment that lasts for twelve consecutive months, the ALJ does not proceed with the remaining steps and finds that the claimant is not disabled at step two. *See* 20 C.F.R. § 404.1520(a)(4)(ii). That is what happened here. The ALJ found Plaintiff failed to prove she had a severe impairment or combination of impairments, noting that there were hardly any

records from the limited period at issue and that they showed no work-related limitations before March 31, 1997, especially since Plaintiff worked up until March 30, 1997. (Tr. at 11).

The basis of Ms. Spurlock's first argument is grounded on her entitlement to a hearing that is both fair and full. *See Miles*, 84 F.3d at 1400. Procedural due process requires that a claimant be given a "meaningful opportunity to present their case." *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976); *Costigan v. Comm'r of Soc. Sec.*, 603 F. App'x 783, 788 (11th Cir. 2015). However, Ms. Spurlock's challenge to the ALJ's decision based on her allegation that she did not testify regarding her impairments and onset date lacks merit, because Plaintiff, who was represented by an attorney during the administrative proceedings, had a meaningful opportunity to present her case.

Plaintiff's first hearing was on March 20, 2013. Ms. Spurlock was given ample opportunity to testify. Indeed, she testified regarding her age, living arrangements, family income, and the date her disability allegedly began. (Tr. at 31-32.) Although Ms. Spurlock did not testify about her disability in detail, she was certainly afforded the opportunity to do so. The ALJ had no duty to tell Plaintiff's attorney that he had the right to further question Plaintiff. *See Hudson v. Heckler*, 755 F.2d 781, 784-85 (11th Cir. 1985) (finding due process did not require an ALJ to

tell a paralegal that she had the right to cross-examine the witness). Still, the ALJ invited Plaintiff's attorney to ask further questions, but Plaintiff's attorney responded, "No, sir." (Tr. at 24). At the end of the hearing, the ALJ confirmed, "Anything else?", and Plaintiff's attorney responded, "No, that's all, Your Honor." (Tr. at 25). The ALJ then pivoted to Plaintiff and asked, "is there anything that you would like to say before we basically close these hearings?" and Plaintiff responded, "No, I don't know." (Tr. at 25). The ALJ allowed Plaintiff to postpone her first hearing in order to supplement the sparse record and develop medical evidence as to Plaintiff's condition in 1997. (Tr. at 35-37.)

Plaintiff's second hearing was on May 24, 2013. At her second hearing, Ms. Spurlock's attorney admitted he was unable to obtain medical evidence from the remote period at issue, especially since Plaintiff's doctors' obligation to retain the evidence had expired. (Tr. at 21-22.)

Importantly, Ms. Spurlock has failed to make a showing of prejudice from her failure to provide further testimony at the hearings, which is necessary before a remand to the Commissioner is warranted. *See Kelley v. Heckler,* 761 F. 2d 1538, 1540 (11th Cir. 1985). "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983). Thus, when alleging a

lack of due process, a claimant must make a showing of prejudice before the Court will require remand to the Commissioner. *Kelley*, 761 F.2d at 1540. The relevant inquiry typically is whether the record reveals evidentiary gaps that result in unfairness or clear prejudice. *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982) (claimant unrepresented at his hearing).

Plaintiff's choice not to testify did not create an unfair evidentiary gap where the choice was of her own volition and informed by her attorney. Plaintiff's choice also did not clearly prejudice her where she has proffered only vague speculation that further questioning would have somehow affected the outcome of her case. For example, in *Kelley*, the court held that despite an ALJ's brief and superficial questioning of an *unrepresented* claimant regarding his medical problems and symptoms, the claimant failed to show prejudice where the claimant merely speculated that more extensive questioning would have benefited him. 761 F.2d at 1540-41. Similarly here, Plaintiff merely speculates that greater questioning would have benefited her. However, she has not explained what she might have said that would have supported her claim of DIB. Plaintiff's attorney produced only four pages of medical evidence from 1997, did not submit an affidavit by Plaintiff after the hearing, and did not raise the adequacy of the hearing when seeking review by the Appeals Council. (Tr. at 5, 220-24.) Plaintiff ultimately is responsible for

producing evidence in support of her claim, *see Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003), and there was simply a lack of evidence showing a severe impairment on or before March 31, 1997. *See Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991) (declining to remand on due process grounds where claimant did "not indicate what facts could have been submitted by an attorney that would have changed the outcome.").

In sum, Plaintiff was afforded all process that was due, and she has further failed to show prejudice stemming from her failure to testify regarding her impairments.

**B.      Medical Expert Testimony to Establish an Onset Date**

The Social Security Administration has established the method by which an ALJ is to determine the onset date of a disability. *See* Social Security Ruling 83-20 (1983). The Social Security Ruling provides:

> In addition to determining that an individual is disabled, the decisionmaker must also establish the onset date of disability. In many claims, the onset date is critical; it may affect the period for which the individual can be paid and may even be determinative of whether the individual is entitled to or eligible for any benefits. . . . In title II cases, disability insurance benefits (DIB) may be paid for as many as 12 months before the month an application is filed. Therefore, the earlier the onset date is set, the longer is the period of disability and the greater the protection received. . . . The onset date of disability is the first day an individual is disabled as defined in the Act and the regulations. Factors relevant to the determination of disability onset include the individual's allegation, the work history, and the medical

> evidence. These factors are often evaluated together to arrive at the onset date. However, the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence.

SSR 83-20. However, at least one other circuit court of appeals has held that SSR 83-20 does not apply when there has not been a finding that a claimant is disabled, because the policy statement applies only when there has been a finding of disability and it is necessary to determine when the disability began. *See Key v. Callahan*, 109 F.3d 270, 274 (6th Cir. 1997) ("since there was no finding that the claimant is disabled as a result of his mental impairment or any other impairments or combination thereof, no inquiry into onset date is required"). In other words, the law does not require determination of an onset date for a claimant who is not disabled.

Thus, Plaintiff's contention that the ALJ should have called a medical expert to determine a disability onset date lacks merit because Plaintiff never established that she was disabled, or even that she had a severe impairment at step two. Indeed, in support of his conclusion that Plaintiff was not disabled because she did not have a severe impairment or combination of impairments, the ALJ considered that Plaintiff experienced various medical problems since the early 1980s. However, the ALJ wrote that in terms of Plaintiff's alleged disability, "Of significant import, is that no treating, examining or reviewing doctor has indicated that the claimant was

or is disabled or otherwise unable to perform work related activities prior to her date last insured." (Tr. at 12.) The ALJ opined that she had no significant mental impairments that caused a limitation of function prior to her date last insured, and that her treatment records reflect that she underwent successful bilateral carpal tunnel surgeries in 1983 and 1984. (Tr. at 12). The ALJ noted that in 1990, spirometry testing revealed no more than medically mild obstructive lung disease, which the ALJ found to be consistent with Plaintiff's smoking, with no impairment causing limitation of function being reported or indicated. The ALJ remarked that she had back surgery in 1992, and healed well (did "very well") and was released to return to her regular job as a cosmetologist. Further, the ALJ wrote, she reported that she continued working until March 30, 1997, which is one day prior to her date last insured of March 31, 1997. In addition, the ALJ pointed out that there were hardly any records from that time period, and that what does exist documents that whatever treatment she may have had left her with little, if any, residual functional limitations prior to her date last insured. (Tr. at 12). In sum, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that significantly limited her ability to perform basic work activities, prior to March 31, 1997. The ALJ stated that his conclusion was supported by her treatment records, including surgical, pulmonary function and x-ray reports. Substantial evidence in

the record supports the ALJ's conclusion and it is not due to be overturned. As such, medical expert testimony as to an onset date was not required, as disability was not established.

## IV.   Conclusion

Upon review of the administrative record, and considering all of Ms. Spurlock's arguments, the Court finds the Commissioner's decision is supported by substantial evidence and in accord with the applicable law. A separate order will be entered.

**DONE** AND **ORDERED** ON APRIL 20, 2016.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE

160704